**DUGANIER v. CAROLINA MOUNTAIN BAKERY**

[179 N.C. App. 184 (2006)]

JOSEPH DUGANIER, Employee, Plaintiff v. CAROLINA MOUNTAIN BAKERY,
Employer, TRAVELERS INSURANCE COMPANY, Carrier, Defendants

No. COA05-1457

(Filed 15 August 2006)

**Workers' Compensation— cancellation of coverage—statutory
requirements—return receipt requested**

 The Industrial Commission correctly determined that an insurer's notice cancelling workers' compensation coverage did not comply with statutory requirements and was not effective because it was not mailed return receipt requested. The policy was "subject to renewal," contrary to defendant's contention, and N.C.G.S. § 58-36-105(b) controlled the cancellation of the policy.

Appeal by defendant-appellant Travelers Insurance Company from opinion and award entered 4 August 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 June 2006.

*Neill S. Fuleihan for plaintiff-appellee.*

*Russell & King, by Sandra M. King, for defendant-appellee
Carolina Mountain Bakery.*

*Northup & McConnell, PLLC, by Steven W. Sizemore, for
defendant-appellant Travelers Insurance Company.*

McGEE, Judge.

Defendant-appellant Travelers Insurance Company (Travelers) issued a workers' compensation insurance policy to defendant-employer Carolina Mountain Bakery (CMB) covering CMB from 5 June 2001 through 5 June 2002 (CMB's policy). Joseph Duganier (plaintiff) began working at CMB in August 2001 and sustained a back injury at work on 17 December 2001.

Plaintiff filed a Form 18 with the North Carolina Industrial Commission (the Commission) on 25 April 2002, alleging he "[f]elt something pop in his back" while working at CMB on 17 December 2001. Plaintiff filed a Form 33 on 25 April 2002 requesting a hearing. Travelers filed a Form 61 on 14 May 2002, denying coverage for plaintiff's injuries on the ground that Travelers cancelled CMB's policy effective 5 December 2001. The parties signed a pretrial agreement on

16 October 2003, stipulating that plaintiff suffered a compensable injury to his back on 17 December 2001.

A deputy commissioner conducted a hearing on the matter on 16 October 2003. Evidence introduced at the hearing tended to show that Travelers mailed a "Notice of Cancellation for Non-payment of Premium" (notice of cancellation) on 15 November 2001 by certified mail to CMB's designated mailing address. Travelers did not mail the notice of cancellation return receipt requested. The effective date of cancellation was listed as 5 December 2001 on the notice of cancellation. The notice of cancellation stated that Travelers would "reinstate this coverage if [Travelers] receive[d] [CMB's] payment on or before the effective date of cancellation." CMB did not make the premium payment by 5 December 2001.

At the time CMB's policy became effective on 5 June 2001, N.C. Gen. Stat. § 97-99(a) set forth the requirements for cancellation for non-payment of premium. This statute provided, in pertinent part: "The carrier may cancel the policy for nonpayment of premium on 10 days' written notice to the insured[.]" N.C. Gen. Stat. § 97-99(a) (1999). In *Wilson v. Claude J. Welch Builders*, 115 N.C. App. 384, 386, 444 S.E.2d 628, 629 (1994), our Court interpreted N.C.G.S. § 97-99(a), stating that the statute did not require "that the notice of intent to cancel due to nonpayment of premium be sent by registered or certified mail."

The N.C. General Assembly amended the workers' compensation insurance policy cancellation statutes in 2001 by removing the cancellation provisions from N.C.G.S. § 97-99(a) and adding N.C. Gen. Stat. § 58-36-105. N.C. Gen. Stat. § 58-36-105(b) provides the following notice requirements for cancellation of a workers' compensation insurance policy:

Any cancellation permitted by subsection (a) of this section is not effective unless written notice of cancellation has been given by registered or certified mail, return receipt requested, to the insured not less than 15 days before the proposed effective date of cancellation. The notice shall be given by registered or certified mail, return receipt requested, to the insured and any other person designated in the policy to receive notice of cancellation at their addresses shown in the policy or, if not indicated in the policy, at their last known addresses. The notice shall state the precise reason for cancellation. Whenever notice of intention to cancel is required to be given by registered or certified mail, no

> cancellation by the insurer shall be effective unless and until such method is employed and completed.

N.C. Gen. Stat. § 58-36-105(b) (2001). Section three of the amending Act which created N.C.G.S. § 58-36-105(b) provides: "This act becomes effective October 1, 2001, and applies to policies issued, renewed or subject to renewal, or amended on or after that date." 2001 N.C. Sess. Laws ch. 241, § 3.

Travelers' compliance officer, Larry Rodriguez (Mr. Rodriguez), testified at the hearing before the deputy commissioner that he was responsible for Travelers' compliance with state laws related to cancellation and nonrenewal notices for its workers' compensation insurance policies. Mr. Rodriguez testified that CMB's policy was not "subject to renewal" at the time of the "cancellation" of CMB's policy. He stated that "[Travelers] would consider a policy subject to renewal when [Travelers] start[s] [its] renewal underwriting process, which is approximately 90 days prior to the expiration date of the policy." The expiration date of CMB's policy was 5 June 2002.

In an opinion and award filed 31 March 2004, the deputy commissioner concluded as follows: (1) plaintiff sustained a compensable injury to his back on 17 December 2001; (2) CMB's policy was not "subject to renewal" on or after 1 October 2001; (3) the cancellation provisions of N.C.G.S. § 97-99(a) applied to CMB's policy at the time of Travelers' notice of cancellation; (4) therefore, Travelers' notice of cancellation and CMB's failure to pay its premium by 5 December 2001 effectively cancelled CMB's coverage; and (5) CMB was uninsured at the time of plaintiff's injury. The deputy commissioner ordered CMB to pay plaintiff temporary total disability and all medical expenses incurred by plaintiff as a result of the injury. Plaintiff filed a notice of appeal with the Commission on 13 April 2004, and CMB filed a notice of appeal with the Commission on 14 April 2004. Plaintiff notified the Commission on 7 October 2004 that he had set-' tled his claim with CMB but would continue his claim against Travelers on the issue of coverage.

The Commission filed an opinion and award on 4 August 2005, affirming the deputy commissioner's decision that plaintiff's injury was compensable but reversing the deputy commissioner's decision that N.C.G.S. § 97-99(a) applied to CMB's policy. Instead, the Commission concluded that CMB's policy was "subject to renewal" on or after 1 October 2001 and therefore N.C.G.S. § 58-36-105(b) was the applicable statute governing the cancellation of CMB's policy. The

Commission concluded that Travelers' cancellation was ineffective because the notice of cancellation had not been sent by registered or certified mail, return receipt requested. The Commission ordered Travelers to pay plaintiff's temporary total disability at a rate of $253.35 per week from 17 December 2001 through 16 October 2003, the date of the hearing before the deputy commissioner. Additionally, Travelers was ordered to pay plaintiff's medical expenses.

Travelers appeals.

---

Travelers appears to argue that because CMB's policy was not "subject to renewal" prior to Travelers' attempted cancellation date of 5 December 2001, the provisions of N.C.G.S. § 58-36-105(b) did not apply, and its cancellation of CMB's policy was effective pursuant to the provisions of N.C.G.S. § 97-99(a). However, the issue in the present case is not whether CMB's policy was "subject to renewal" at the time of Travelers' attempted cancellation on 5 December 2001. Rather, the issue in the present case is whether CMB's policy was "subject to renewal" on or after 1 October 2001 such that the provisions of N.C.G.S. § 58-36-105(b) applied to Travelers' notice of cancellation of CMB's policy. If CMB's policy was "subject to renewal" on or after 1 October 2001, N.C.G.S. § 58-36-105(b) governed the cancellation of CMB's policy and required Travelers to send its notice of cancellation by registered or certified mail, return receipt requested, which Travelers concedes it did not do.

Our Court limits its review of an opinion and award of the Commission to two inquiries: (1) whether there is competent evidence in the record to support the Commission's findings of fact, and (2) whether the Commission's conclusions of law are justified by the findings of fact. *Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 389, 465 S.E.2d 343, 345, *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996). "[S]o long as there is some 'evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary.'" *Shah v. Howard Johnson*, 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quoting *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980)), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 17 (2001). We review the Commission's conclusions of law *de novo*. *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003).

Travelers assigns error to several findings of fact and conclusions of law of the Commission related to the term "subject to renewal." Although the Commission regarded them as findings of fact, its findings challenged by Travelers "[are] in reality . . . conclusion[s] of law . . . rather than . . . determination[s] of facts from the appellant's evidence[.]" *See State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 30, 338 S.E.2d 888, 896 (1986). Therefore, we review the Commission's statements regarding the term "subject to renewal" and the applicability of N.C.G.S. § 58-36-105(b) as conclusions of law. *See Mackie*, 79 N.C. App. at 30, 338 S.E.2d at 896. Essentially, Travelers contends that the following conclusions of the Commission are not "supported by prior legislative or judicial authority and [are] contrary to the laws of statutory construction": (1) CMB's policy was "subject to renewal" on or after 1 October 2001; (2) the cancellation provisions of N.C.G.S. § 58-36-105(b) applied at the time of Travelers' notice of cancellation of CMB's policy; (3) Travelers' notice of cancellation was ineffective because the notice of cancellation was not sent by registered or certified mail, return receipt requested; and (4) plaintiff is entitled to have Travelers pay him temporary total disability compensation and medical expenses incurred as a result of the compensable injury.

The term "subject to renewal" is not defined in the statute and its meaning has not been interpreted by our Courts. When our Courts interpret a statutory provision of our Workers' Compensation Act, we follow well-established rules of statutory construction:

"First, the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of 'judicial legislation.' . . . Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.' Fourth, in all cases of doubt, the intent of the legislature regarding the operation or application of a particular provision is to be discerned from a consideration of the Act as a whole—its language, purposes and spirit. Fifth, and finally, the

**DUGANIER v. CAROLINA MOUNTAIN BAKERY**

[179 N.C. App. 184 (2006)]

Industrial Commission's legal interpretation of a particular provision is persuasive, although not binding, and should be accorded some weight on appeal and not idly cast aside, since that administrative body hears and decides all questions arising under the Act in the first instance."

*Allen v. Piedmont Transport Services*, 116 N.C. App. 234, 238, 447 S.E.2d 835, 837-38 (1994) (emphasis omitted) (quoting *Deese v. Lawn and Tree Expert Co.*, 306 N.C. 275, 277-78, 293 S.E.2d 140, 142-43, *reh'g denied*, 306 N.C. 753, 303 S.E.2d 83 (1982) (citations omitted)).

In the present case, we apply the rules of statutory construction to the term "subject to renewal." Applying these rules of statutory construction, we conclude that CMB's policy was "subject to renewal" after 1 October 2001. Therefore, N.C.G.S. § 58-36-105(b) controlled the cancellation of CMB's policy and Travelers' notice of cancellation was ineffective. First, as directed by *Allen*, we construe the "subject to renewal" provision of 2001 N.C. Sess. Laws ch. 241, § 3 liberally in order that benefits will not be denied based upon " 'mere technicalities or strained and narrow interpretations[.]' " *See Allen*, 116 N.C. App. at 238, 447 S.E.2d at 837 (quoting *Deese*, 306 N.C. at 277, 293 S.E.2d at 143).

Second, we look to the plain, ordinary meaning of the term "subject to renewal." *See Id.* "If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001). "Subject to" is defined as "dependent or conditional upon: *the proposed merger is subject to the approval of the shareholders*." The New Oxford American Dictionary 1685 (2d ed. 2005). "Renewal" is defined as "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Black's Law Dictionary 1322 (8th ed. 2004). Therefore, the plain meaning of "subject to renewal" as applied to this case denotes a conditional situation in which CMB's policy was liable to be replaced with a new policy from Travelers in the future. Mr. Rodriguez, Travelers' compliance officer, effectively admitted that CMB's policy was "subject to renewal" *after* 1 October 2001, when he testified it was "subject to renewal" ninety days prior to the expiration date in June 2002, which was approximately 7 March 2002.

Third, it is unreasonable for our Court to assume the General Assembly left the applicability of N.C.G.S. § 58-36-105(b) " 'open to

inference or speculation.' " *See Allen*, 116 N.C. App. at 238, 447 S.E.2d at 837 (quoting *Deese*, 306 N.C. at 278, 293 S.E.2d at 143). Considering the ordinary meaning of "subject to renewal," the General Assembly did not leave the statute's applicability subject to speculation, stating: "This act becomes effective October 1, 2001, and applies to policies issued, renewed or subject to renewal, or amended on or after that date." 2001 N.C. Sess. Laws ch. 241, § 3. By specifically including each situation in which a policy was included within the new statute as of 1 October 2001, the General Assembly reinforced its intention for N.C.G.S. § 58-36-105(b) to apply broadly to notices of cancellation for nonpayment of premium.

Fourth, we consider the Workers' Compensation Act " 'as a whole—its language, purposes and spirit[]' "—to determine the intent of the General Assembly regarding the applicability of N.C.G.S. § 58-36-105(b), particularly the meaning of "subject to renewal." *See Allen*, 116 N.C. App. at 238, 447 S.E.2d at 837 (quoting *Deese*, 306 N.C. at 278, 293 S.E.2d at 143). "[T]he underlying purpose of the North Carolina Workers' Compensation Act is to 'provide compensation to workers whose earning capacity is diminished or destroyed by injury arising from their employment[.]' " *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004) (quoting *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 233, 472 S.E.2d 397, 401 (1996)). It is the "manifest legislative intent that the employer's liability should be insured at all times[.]" *Moore v. Electric Co.*, 264 N.C. 667, 674, 142 S.E.2d 659, 665 (1965); *see generally* N.C. Gen. Stat. § 97-93 (2005).

Finally, although the Commission's interpretation regarding the applicability of N.C.G.S. § 58-36-105(b) to CMB's policy is not binding, its " 'legal interpretation of a particular provision is persuasive . . . and should be accorded some weight on appeal . . . since [the Commission] hears and decides all questions arising under the [Workers' Compensation] Act in the first instance.' " *See Allen*, 116 N.C. App. at 238, 447 S.E.2d at 837-38 (quoting *Deese*, 306 N.C. at 278, 293 S.E.2d at 143); *see also Hanks v. Utilities Co.*, 210 N.C. 312, 319-20, 186 S.E. 252, 257 (1936) (stating the long-held recognition of the Commission's authority to determine the rights and liabilities of employees and employers); *see generally* N.C. Gen. Stat. § 97-91 (2005).

The Commission concluded that the cancellation provisions of N.C.G.S. § 58-36-105(b) controlled on 15 November 2001, the date

Travelers sent its notice of cancellation of CMB's policy. Furthermore, the Commission determined that the notice was ineffective as a matter of law because it did not comply with the statutory requirement that notice of cancellation for nonpayment of premium be sent by registered or certified mail, return receipt requested. Construing the term "subject to renewal" in compliance with our rules of statutory construction, we agree with the Commission. CMB's policy was "subject to renewal" after 1 October 2001, the date when N.C.G.S. § 58-36-105(b) became effective. Travelers' notice of cancellation for nonpayment of premium was not mailed return receipt requested as required by N.C.G.S. § 58-36-105(b) and therefore was ineffective.

Affirmed.

Judges ELMORE and STEELMAN concur.