***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives. The Full Commission AFFIRMS with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter, to the extent jurisdictional questions are not raised.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, to the extent jurisdictional questions are not raised.
3. All parties have been properly designated, and there is no question as to misjoinder or non-joinder of parties, to the extent jurisdictional questions are not raised. *Page 3 
4. Plaintiff alleges to have sustained a compensable injury on March 24, 2009.
5. Nothing herein is to be construed as an admission by any party that they are subject to the jurisdiction of the N.C. Industrial Commission and all prior objections to jurisdiction are incorporated herein by reference.
6. Nothing herein is to be construed as a waiver by any party of its rights, if any, to a jury trial pursuant to its constitutional due process rights.
 *********** EXHIBITS
The following documentary evidence was received as:
Stipulated Exhibit 1:
1. All filed NCIC Forms, correspondence, Motions and Orders including:
 • Form 18,
 • Form 33 dated May 21, 2009 filed by Plaintiff,
 • Form 33R dated June 18, 2009 filed by Defendant-Travelers,
 • Amended Form 33R dated June 18, 2009 filed by Defendant Travelers,
 • Motion to Dismiss Defendant-Travelers as a Party,
 • Plaintiff's response to Defendant-Travelers Motion to Dismiss filed July 2, 2009,
 • Defendant-Travelers' response to Plaintiff's Response to Defendant-Travelers Motion to Dismiss filed July 9, 2009,
 • Order dated July 8, 2009 denying Defendant-Travelers Motion to Dismiss,
 • Order dated July 13, 2009 denying Defendant-Travelers Motion to Dismiss, *Page 4 
 • Order removing claim from October 2009 docket,
 • Form 33 filed by Defendant-Travelers,
 • Order dated August 20, 2009 dispensing with mediation,
 • Form 61 dated September 17, 2009 submitted by Defendant-Lamm,
 • Form 33R dated September 29, 2009, submitted by Defendant-Lamm,
 • Amended Form 18 filed by Plaintiff,
 • Motion to Add a Party to the Claim, specifically Derek Scott, Scott Insurance Agency and its EO policy dated October 21, 2009,
 • Order adding Derek Scott and its Errors and Omissions policy dated October 28, 2009,
 • Form 61 dated December 3, 2009 submitted by Defendant-Lamm,
 • Defendant-Lamm's Motion to Compel Scott Insurance Company to respond to discovery,
 • Defendant-Lamm's Motion to Compel Jimmy Worrell to respond to discovery,
 • Motion to Dismiss Erie Insurance,
 • Motion to Dismiss Patrick Lamm and Builder's Mutual,
 • Motion to Add Cincinnati Insurance filed by Plaintiff and Defendant-Lamm/Builder's Mutual,
 • Order dated January 26, 2010 granting Defendant-Lamm's Motions to Compel discovery responses against Defendant-Worrell and Defendant-Scott,
 • Plaintiff's response to Defendant-Erie's Motion to Dismiss Erie Insurance, *Page 5 
 • Defendant Scott Insurance Agency's Motion to Dismiss,
 • Order dated January 29, 2009, dismissing Erie Ins. Co. with prejudice,
 • Plaintiff's response to Motion to Dismiss of Defendant-Lamm,
 • Order dated February 5, 2010 dismissing Erie Insurance from the claim,
 • Order dated February 8, 2010, adding Cincinnati Insurance Co. as a party to the claim,
 • Order dated February 8, 2010, denying Defendant-Scott's Motion to Dismiss,
 • Order dated February 8, 2010, denying Defendant-Lamm's Motion To Dismiss,
 • Order dated February 8, 2010, denying Defendant-Travelers' Motion to Dismiss,
 • Order dated February 8, 2010, setting hearing for April 6-8, 2010 in Wilson, NC,
 • Defendant-Scott's Notice of Appeal to the Full Commission,
 • Motion to Dismiss Defendant-Scott's Notice of Appeal to the Full Commission submitted by Defendant-Lamm,
 • Defendant-Scott's Amended Notice of Appeal to the Full Commission,
 • Defendant-Scott's Response to Defendant-Lamm's Motion to Dismiss Scott Insurance Agency's Appeal to the Full Commission and Motion to Stay all Proceedings Against Scott Insurance Agency, and
 • Notice from Full Commission in relation to appeal filed by Defendant-Scott. *Page 6 
2. Defendant-Travelers' policy for Plaintiff, dates of coverage from July 24, 2008 through July 24, 2009, and relevant materials from the NC Rate Bureau.
3. Certificates of Insurance held by Defendant-Lamm dated:
 • April 11, 2006,
 • April 19, 2006,
 • June 21, 2007,
 • January 17, 2008, and
 • June 12, 2008.
4. Certificates of Insurance held by Defendant-Lamm
5. All discovery, including but not limited to:
 • Plaintiff's responses to Defendant-Travelers First Set of Interrogatories and Requests for Production,
 • Plaintiff's responses to Defendant-Lamm's First Set of Interrogatories and Requests for Production to Plaintiff,
 • Plaintiff's responses to Defendant-Scott's First Set of Interrogatories and Requests for Production to Plaintiff,
 • Defendant-Travelers' responses to Plaintiff's First Set of Interrogatories and Requests for Production,
 • Defendant-Travelers' responses to Defendant-Scott's First Set of Interrogatories and Requests for Production,
 • Defendant-Worrell's responses to Defendant-Travelers First Set of Interrogatories and Requests for Production, *Page 7 
 • Defendant-Worrell's responses to Defendant-Lamm's First Set of Interrogatories and Requests for Production,
 • Defendant-Lamm's responses to Defendant-Scott's First Set of Interrogatories and Requests for Production,
 • Defendant-Scott's responses to Defendant-Lamm's First Set of Interrogatories and Requests for Production,
 • Defendant-Scott's responses to Defendant-Lamm's Second Set of Interrogatories and Requests for Production, and
 • Defendant-Scott's responses to Defendant-Cincinnati's First Set of Interrogatories and Requests for Production.
6. Plaintiff's 1099s for 2005, 2006, 2007, 2008 and Plaintiff's 2008 tax return.
7. W-9 for Plaintiff dated August 8, 2008.
8. Letters from Defendant-Worrell dated:
 • December 5, 2005,
 • July 14, 2006,
 • June 8, 2007,
 • August 24, 2007,
 • August 30, 2008, and
 • December 26, 2008.
9. Receipt of payment dated August 8, 2008.
10. Cincinnati Policy at issue.
11. Coverage Information provided by AG's office.
12. Form 1099 for 2009. *Page 8 
13. Medical Records.
14. Medical Bills.
 • Plaintiff's Exhibit 2 — CV of Haywood Starling.
 • Plaintiff's Exhibit 3 — Known Signatures.
 • Plaintiff's Exhibit 4 — Conclusions by Mr. Starling.
 • Plaintiff's Exhibit 5 — Signature Page.
 *********** MOTION TO DISMISS
Defendant-Scott Insurance Company and Defendant-Swiss Reinsurance filed a motion requesting they be dismissed from this action. The Deputy Commissioner allowed this motion. Upon review of this motion, the Full Commission AFFIRMS the allowance of the dismissal of these two parties.
 CONTESTED ISSUES
ISSUES of PLAINTIFF:
1. Whether Plaintiff was an employee of Defendant-Worrell or an independent contractor on March 24, 2009 within the meaning of the Act?
2. Whether Plaintiff suffered a compensable injury, including paralysis, by accident on March 24, 2009 that arose out of and in the course of his employment with Defendant-Worrell or that arose out of and in the course of his work for Defendant-Lamm?
3. Whether Plaintiff was covered for his injury by Defendant-Travelers and/or Defendant-Cincinnati Insurance and/or Defendant-Builders Mutual Insurance? *Page 9 
4. Whether any of the named insurance companies, Plaintiff or other named Defendants are entitled to compensation from the Errors and Omissions Carrier for Defendant-Scott?
5. What is Plaintiff's average weekly wage and compensation rate?
6. All issues listed by any other party and reservation of rights to modify.
ISSUES of DEFENDANT-TRAVELERS:
1. Whether Defendant-Travelers should be dismissed for lack of insurance coverage for Plaintiff?
2. If coverage exists for Plaintiff for an accident arising out of his employment, then whether Plaintiff sustained an injury by accident in the course and scope of employment so as to fall under the Workers' Compensation Act?
3. All issues listed by opposing parties and reservation of rights to modify.
ISSUES of DEFENDANT-WORRELL:
1. All issues listed by other parties.
ISSUES of DEFENDANT-LAMM:
1. Whether Plaintiff was an employee within the meaning of the North Carolina Workers' Compensation Act on March 24, 2009?
2. Whether Plaintiff was an independent contractor, sub-contractor, or sole proprietor on March 24, 2009?
3. Whether there was an employee/employer relationship between Plaintiff and Defendant-Worrell on March 24, 2009?
4. Whether Plaintiff suffered a compensable injury by accident on March 24, 2009 that arose out of and was in the course and scope of his employment on that date? *Page 10 
5. Which entity, if any, is responsible for Plaintiff's injuries, medical treatment, and resulting disability?
6. Whether Defendant-Lamm properly complied with the requirements of N.C. Gen. Stat. § 97-19 and was therefore not Plaintiff's statutory employer on March 24, 2009?
7. What is Plaintiff's average weekly wage and corresponding compensation rate?
8. All issues listed by opposing parties and reservation of rights to modify.
ISSUES of DEFENDANT-CINCINNATI:
1. Was the Cincinnati policy of insurance in effect when Plaintiff was injured or was the Cincinnati policy properly cancelled prior to Plaintiff's injury?
2. Whether Plaintiff was an employee of Jimmy Worrell when he was injured?
3. If Plaintiff was an employee of Jimmy Worrell, was Plaintiff in the course and scope of employment when he was injured? *Page 11 
4. Whether Plaintiff's civil lawsuit against Defendant-Worrell estops and/or precludes Plaintiff from asserting Worrell was his employer?
5. Pursuant to N.C. Gen. Stat. § 97-19, what is the order of responsibility of payment for Plaintiff's benefits if any are awarded?
6. All issues listed by other parties.
ISSUES of DEFENDANT-SCOTT:
1. All issues listed by all other parties
2. Does the N.C. Industrial Commission have personal and subject matter jurisdiction over the Defendant Scott?
3. Is Defendant Scott entitled to a jury trial pursuant to its constitutional due process rights?
4. Whether Defendant Scott is an employer or carrier as defined by the North Carolina Workers' Compensation Act?
5. Whether the N.C. Industrial Commission has authority to assess an award of workers' compensation benefits against an independent insurance agency who is not an employer or insurer as defined and/or contemplated by the North Carolina Workers' Compensation Act?
6. Whether Defendant Worrell had workers' compensation insurance coverage in place at the time of Plaintiff's accident on March 24, 2009?
7. Was Defendant Worrell's workers' compensation insurance coverage with Cincinnati properly cancelled at a time prior to Plaintiff's accident on March 24, 2009?
8. If Defendant Worrell did not have workers' compensation insurance coverage at the time of Plaintiff's accident on March 24, 2009, was he responsible for his failure to have workers' compensation insurance coverage in place at that time for any reason, including but not limited to a failure to comply with audit requests of Defendant Cincinnati?
9. Whether Defendant Worrell was eligible to obtain workers' compensation insurance coverage at the time of Plaintiff's accident on March 24, 2009 through the North Carolina Rate Bureau or any insurance carrier?
10. If not, whether Defendant Worrell was responsible for his ineligibility to obtain workers' compensation insurance coverage at the time of Plaintiff's accident on March 24, 2009 through the North Carolina Rate Bureau or any insurance carrier?
11. Did Defendant Worrell request that Defendant Scott procure workers' compensation insurance for his business at any time following the alleged cancellation of his workers' compensation insurance policy with Defendant Cincinnati? *Page 12 
12. If Defendant Worrell requested that Defendant Scott procure workers' compensation insurance for his business at some time following the alleged cancellation of his workers' compensation insurance policy with Defendant Cincinnati, was Defendant Worrell eligible to obtain worker's compensation insurance coverage such that Defendant Scott could procure coverage per Defendant' Worrell's request?
13. Was Defendant Scott negligent in any other way with respect to carrying out the duties of an independent insurance agency causing damage to Defendant Worrell?
14. Whether the N.C. Industrial Commission has statutory authority to decide whether the Scott Agency was negligent in carrying out the duties of an independent insurance agency for its customer, Defendant Worrell?
15. Whether the N.C. Industrial Commission has statutory authority to decide whether the Scott Agency, as an independent insurance agency, failed to procure insurance coverage that might have been requested by Defendant Worrell?
16. Whether Defendant Scott made a negligent misrepresentation to Defendant Lamm with respect to the certificate of insurance it provided to Defendant Lamm, on behalf of Defendant Worrell, on or about August 12, 2008?
17. Whether privity of contract exists between Defendant Lamm and Defendant Scott such that Defendant Lamm can recover from Defendant Scott on negligent misrepresentation claim with respect to the information on the certificate of insurance provided to it by Defendant Scott, on behalf of Defendant Worrell on or about August 12, 2008?
18. Whether Defendant Lamm justifiably relied on the information on the certificate of insurance provided to it by Defendant Scott, on behalf of Defendant Worrell on or about *Page 13 
August 12, 2008 in hiring Defendant Worrell to work on the construction job at the time of Plaintiff's accident on March 24, 2009?
19. Whether Defendant Lamm was permitted under applicable law to rely on the certificate of insurance provided to it by Defendant Scott, on behalf of Defendant Worrell, on or about August 12, 2008 to avoid being a statutory employer in connection with the construction project on which Worrell and Plaintiff were working at the time of the accident on March 24, 2009?
20. Whether the N.C. Industrial Commission has statutory authority to decide a negligent misrepresentation claim by Defendant Lamm against Defendant Scott?
ISSUES of the STATE:
1. Which Defendants, if any, were subject to the provisions of Chapter 97 and thus required to maintain workers' compensation insurance for their employees in accordance with N.C. Gen. Stat. § 97-93?
2. What penalties, if any, are to be assessed against any Defendants pursuant to N.C. Gen. Stat. § 97-94(b) deemed to be subject to the requirements of N.C. Gen. Stat. § 97-93 for failure to maintain workers' compensation insurance?
3. What penalties, if any, are to be assessed against any individuals pursuant to N.C. Gen. Stat. § 97-94(d) who had the ability and authority to bring a Defendant-Employer into compliance with N.C. Gen. Stat. § 97-93 and who failed or neglected to do so?
 ***********
Based upon the competent evidence of record and the reasonable inferences there from, the Full Commission makes the following additional:
 FINDINGS OF FACT *Page 14 
1. At the time of the hearing before the Deputy Commissioner, Plaintiff, Jose Clemente Hernandez Gonzalez, was 36 years old with a date of birth of June 11, 1973. Other than approximately a three month period in late 2008, Plaintiff exclusively worked for Defendant, Jimmy Worrell d/b/a Worrell Construction, from 1999 through March 24, 2009.
2. Defendant Worrell was an individual, unincorporated employer. Worrell was a residential framing subcontractor. Worrell met with general contractors, reviewed blueprints, negotiated and entered into contracts for framing on a job-by-job basis.
3. Plaintiff began to work for Worrell in 1999. Plaintiff initially worked as a carpenter's helper, supplying such items as boards and nails to other employees on the jobsite. Plaintiff eventually learned the skills to allow him to graduate from helper to carpenter and finally to crew leader, or "lead man."
4. Although Plaintiff had learned to follow blueprints, he continued to follow the supervision and direction of Worrell to comply with the contracts entered into by Worrell. Even as Plaintiff acted as crew leader, Worrell would typically travel to the job or speak with Plaintiff to ensure that the work of Worrell's employees was satisfactory.
5. Worrell paid Plaintiff and the other employees by the hour. Initially, Worrell paid Plaintiff $6.50 or $7.00 an hour. Plaintiff's pay gradually increased over the years to $23 per hour. For calendar year 2008, Plaintiff was paid $47,870.00. Worrell paid Plaintiff and the other crew members in cash. Plaintiff's average weekly wage at the time of the accident was $920.58, which yielded a compensation rate of $613.75.
6. There were usually four to six employees on the jobsite, including Plaintiff. Plaintiff reported the number of hours everyone worked each day and at the end of the week to *Page 15 
Worrell. Worrell would hand out the cash payments based upon the hours worked. Worrell was in charge of all the hiring and firing.
7. When the work site was "some distance" from Wilson County, Worrell provided the transportation. Worrell bid on jobs and entered into contracts with the general contractors. Worrell also supplied almost all of the equipment, including but not limited to, "air tools, levels and sledge hammers." The work was performed on behalf of Worrell, with Worrell directing the employees on where to go. Plaintiff referred to Worrell as his "boss". Plaintiff never hired or fired anyone. Plaintiff never negotiated contracts with third parties or general contractors.
8. Patrick Lamm is the owner, member and manager of the LLC, Patrick Lamm and Company. The company is a general contracting company in the residential building business in North Carolina and Virginia. Lamm subcontracted with Worrell to perform framing work. Worrell entered into a contract with Lamm sometime early in 2009, which was the contract upon which Plaintiff was working on March 24, 2009. Worrell framed for Lamm over many years, but in late 2008, work became sparse. According to Worrell, he had placed a bid to get a framing job in early 2009 with Lamm.
9. Worrell purchased workers' compensation insurance policies, as well as general liability policies, at the Scott Insurance Agency for the policy years of August 2005-2006, 2006-2007 and 2007-2008. He also purchased a policy issued in August 2008 which covered the 2008-2009 period. Scott Insurance Agency provided the certificates of insurance to Worrell. These certificates were sent to Lamm from the Scott Insurance Agency at the start of the initial term and then at the start of each renewal term.
10. Lamm stated that Worrell worked on other houses for him between August 13, 2008 and March 24, 2009. There were 10 homes in the 2008-2009 time period in which Worrell *Page 16 
did work for Lamm. Generally, with each house, Lamm would meet with his subcontractors, review the plans and secure bids. Lamm would then make a decision as to the subcontractors he wanted to complete the job and would then enter into separate contracts.
11. Lamm did not secure a new certificate of insurance for each of the contracts with Worrell. Lamm erroneously relied on the single certificate that Worrell produced earlier. Lamm did not get a certificate of insurance specifically for the project upon which Worrell and Plaintiff were working on March 24, 2009.
12. On March 24, 2009, the date of the injury giving rise to this claim, Builders Mutual insured Patrick Lamm and Company for workers' compensation coverage. Lamm was the general contractor for the project upon which Plaintiff was working on the date of the accident.
13. In November of 2007, Worrell received a notice from Cincinnati that if he did not comply with an audit, Cincinnati intended to cancel Worrell's policy. Worrell had received a similar notice of audit during the 2005-2006 coverage period which resulted in Worrell meeting "a lady" from the Scott Insurance Agency at a Bojangles to provide the requested information.
14. Sue Quinlan, a senior account manager underwriter for Travelers, which is a direct assignment carrier for Cincinnati, explained that the 2007-2008 policy was a renewal, not a new policy. The audit requested by Cincinnati in the fall of 2007 was for the policy period of 2007-2008. Quinlan said Worrell's wife called Cincinnati/Travelers on October 31, 2007 regarding the audit and was told the information had to be submitted or a cancellation would occur.
15. For the 2007 audit request, Worrell's wife went to the Scott Insurance Agency and met with Derrick Scott. Mrs. Worrell took the books and records to Scott's office and was *Page 17 
told not to worry about the audit any more. Worrell said he never heard anything more about the issue until well after Plaintiff's injury. Scott Insurance Agency did not forward the information to Cincinnati until February, 2008.
16. Sue Quinlan explained that Cincinnati/Travelers sent a notice of cancellation to Worrell with the policy cancelling as of November 21, 2007. Worrell never received anything else, from Cincinnati/Travelers or the North Carolina Rate Bureau to the effect that his insurance had been cancelled.
17. Quinlan stated that the letter containing the notice of cancellation went out with a "green card" attached to the envelope. A returned green card would have had the signature of Worrell or the individual who received the letter, providing proof of service. Cincinnati/Travelers could not produce a returned green card. No evidence was produced to indicate that Defendant Cincinnati properly completed the certified mailing process, as a green card was not produced to prove that service was ever completed to Plaintiff. The Full Commission finds that Cincinnati did not properly cancel Defendant-Worrell's workers' compensation coverage by means of registered or certified mail, return receipt requested, pursuant to N.C. Gen. Stat. § 58-36-105(b). Therefore, Cincinnati's attempted cancellation of Worrell's policy was ineffective.
18. Denise Campuzano, an employee of the U.S. Postal Service, indicated in her deposition that she attempted to retrieve the signed green card associated with the cancellation at issue. She ran a search of a tracking number and identified that the letter was delivered at 1:12 pm on November 5, 2007 in Wilson, North Carolina. Ms. Campuzano was unable to retrieve the green card to verify a signature of acceptance. When asked by Counsel "if a person requested to *Page 18 
mail something by certified mail with return receipt, would they get a green card back," Ms. Campuzano answered, "Yes."
19. Following the alleged cancellation of Worrell's policy, Worrell went to Derrick Scott's office, of the Scott Insurance Agency, in August 2008. Cincinnati did not send Worrell any notice thereafter that it would not renew his workers' compensation policy. Worrell, relying upon the representation by Derrick Scott about the 2007 audit, and believing his policy was in effect, sought to have the Scott Insurance Agency renew his policy for the 2008-2009 period. Worrell paid $850 cash for the workers' compensation insurance renewal with Defendant Cincinnati. Worrell received a receipt for the cash from Derrick Scott. Cincinnati did not notify Defendant-Worrell at least 45 days ahead of time of their intention of non-renewal as required N.C. Gen. Stat. § 58-36-110(b). The Full Commission finds that Defendant-Worrell's workers' compensation coverage with Cincinnati was in effect on March 24, 2009.
20. At the time that Worrell renewed his policy, Worrell was beginning another job for Lamm and needed Scott Insurance Agency to send a certificate of insurance. Once Worrell paid for the policy, Scott Insurance Agency faxed the certificate to Lamm for a policy effective for the August 2008-2009 period. Derrick Scott indicated that the workers' compensation information had been put on the certificate in error; however, he admitted that he did not call Worrell until more than a year later, in the late summer or early December 2009, to inform Worrell that there was a problem with his workers' compensation policy.
21. According to Worrell, it was December 2009 when Scott Insurance Agency called him to inform him that there was a problem with his workers' compensation policy. Derrick Scott informed Worrell that there was no policy in place last year. Derrick Scott told Worrell that he needed to refund the $850. Scott Insurance Agency refunded the money in 2010. *Page 19 
22. In August, 2007, Worrell made a decision to not cover his employees, in part, because of how dangerously they sometimes worked and because of his declining health. Worrell told his employees to meet him at the Taylor-Grady Agency in order for them to secure their own insurance policies. Worrell called Nora Lucas at Taylor-Grady Insurance Agency in Wilson, N.C. prior to July, 2007 to inquire about "ghost policies." On July 20, 2007, Worrell and his five "men" met there. Lucas, who co-owned the agency, said she remembered "Jim coming into my office with five other gentlemen to get insurance." The five employees, plus Worrell and Lucas, went into a room together with Lucas acquiring the requisite information for the policies. Lucas described it as a "collective" meeting, saying she "didn't think about privacy issues."
23. According to Plaintiff, he had been told by his "boss," Worrell, to go to the agency. While there, Plaintiff said he did not understand much about what was happening but explained that they all went in, signed some papers that were supposed to be the policy applications providing names and addresses and social security numbers and rejection of coverage. Section 9 of the application read,
 "CORPORATE OFFICERS, SOLE PROPRIETORS, PARTNERS OR MEMBERS OF A LIMITED LIABILITY COMPANY, PROVIDE A COMPLETE LIST OF THE NAMES AND TITLES, AS WELL AS THE ADDITIONAL PERTINENT INFORMATION AS IT PERTAINS TO ALL OFFICERS, SOLE PROPRIETORS, GENERAL PARTNERS OR MEMBERS OF A LIMITED LIABILITY COMPANY. PLEASE NOTE THAT THE ANNUAL SALARY IS REQUIRED REGARDLESS OF ELECTION OR REJECTION OF COVERAGE."
Plaintiff explained that everything was in English and that he understood most words, but some words he did not. Plaintiff did not read the policies. Plaintiff did not understand nor was he aware that he had excluded himself from coverage in the application process. *Page 20 
24. Plaintiff said he was told he was getting a "ghost policy," but he did not know what that was, but that ". . . my boss (Worrell) told us that we needed to go there . . . and we need to take a policy to be able to keeping work." The employees listed themselves as sole proprietors. Plaintiff and the other employees were given 1099's as early as 2003 and they filed taxes as "sole proprietors." Both Knox and Plaintiff indicated they did not understand what "sole proprietor" meant and let others prepare their taxes. Plaintiff always explained that he was an employee of Worrell and he did not have his own business.
25. When asked of Lucas if she thought the Hispanics in the crew, which included Plaintiff, understood the questions on the application, Lucas responded, "How am I to determine what somebody understands?" Lucas just asked the questions off of the application and did not explain anything. As she read the questions, Lucas filled in the answers to each application, and then handed the application to the individual to sign. She then immediately took back the application and went to the next person. When asked if the men had a chance to read the applications, Lucas answered, "Do I know if someone is a speed reader or can read it? I do not know that."
26. Worrell actually paid for all five of the "ghost policies." In December 2007, information regarding the five policies were mailed from Travelers and Lucas to Worrell. Worrell's home address was listed as the address for Plaintiff's policy, with Plaintiff's name listed and then a "%" followed by Worrell's name and address. Worrell explained that he wanted to make sure "my guys" kept up with their audits because if their policies were cancelled, ". . . that would throw their coverage to be in my responsibility on my ghost policy and I was not going to do that." Lucas said she never saw Plaintiff after that initial meeting. Thereafter, her dealings regarding Plaintiff's policy, were with Worrell. *Page 21 
27. The policy was later "lapsed" or was terminated by Travelers for a non response to an audit request. Lucas contacted Worrell, who obtained the material from Plaintiff and the "lapsed" policy was reinstated. There was no new rejection of coverage by Plaintiff during the cancellation or reinstatement time periods. There was no authority in the file for him to do so, but, nevertheless, Lucas said Worrell signed his own name to the audit response for Plaintiff. Worrell stated that he did not believe that was his signature on the audit response. Lucas said she did not sign "Jim Worrell" to the audit response.
28. On the morning of March 24, 2009, Plaintiff travelled from his home in Bailey, N.C. to Worrell's home in Wilson, N.C. after being asked to work by Worrell. Plaintiff rode as a passenger in Worrell's vehicle, a white van, with several of Worrell's other employees, from Worrell's home to the job site at Lake Gaston in Virginia. Defendant Lamm was the general contractor for this work assignment. On a direct route home at the end of the work day, a co-employee, Richard Galladay, accidentally drove Worrell's vehicle off the road and into a tree. Plaintiff was seated in the front passenger seat. Heath Knox, Jose Hernandez and Marlon Amador were also in the van. As a result of the accident, Plaintiff was severely injured and air lifted to Pitt Memorial Hospital.
29. Plaintiff sustained a "comminuted burst fracture C5 involving all three Columns with severe central canal stenosis and associated epidural and/or subarachnoid hemorrhage." Plaintiff sustained a "hypotension spinal cord injury" and fractures to his right elbow and right wrist and a compound fracture of his left wrist. As a result of these injuries, Plaintiff is now a quadriplegic and is totally and permanently dependent on others for all daily functions, including turning in his bed, bathing and eating. Prior to his accident, Plaintiff was in excellent health. *Page 22 
30. Plaintiff remained in-patient at Pitt Memorial Hospital and then Pitt's Regional Rehabilitation Center, from the date of the accident until July, 2009. Plaintiff has been totally disabled from any kind of work since the date of the accident.
31. Plaintiff has not received the medical care he has desperately needed since his release from the rehabilitation center. Plaintiff requires twenty-four hour continuing attendant care and continuing medical care.
32. Plaintiff's wife, Cherry Gonzalez, has expended many hours providing attendant care for her husband, including turning Plaintiff in bed, moving him to a wheelchair, cooking, feeding, bathing and grooming Plaintiff since Plaintiff's release date.
33. Katherine Thaman is accepted for purposes of this claim as an expert in life care planning. The life care plan submitted by Thaman was necessary, appropriate and reasonable although she was unable to complete the plan which ultimately cost $6,568.80.
34. As a result of the injuries Plaintiff sustained, Plaintiff has incurred a substantial medical lien in the amount of $201,813.59 by University Health Systems, Pitt County Memorial Hospital, $424.75 to Johnson Ambulance Service, $88,030 to the ECU School of Medicine, $7,056 to MedOasis, $14,768.40 to Orthopaedics East, $1,890 to Eastern Radiologists, $124 to Carolina Family Health Centers, $2,371.50 to Wilson County Health Department and $1,713 to Advanced Home Care.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission renders the following:
 CONCLUSIONS OF LAW *Page 23 
1. On March 24, 2009, an employee-employer relationship existed between Plaintiff and Employer-Defendant, Jimmy Worrell Construction d/b/a Worrell Construction. N.C. Gen. Stat. § 97-2.
2. In Hayes v. Elon College,224 N.C. 11, 16, 17, 29 S.E. 2d 137, 140 (1944), the Supreme Court set out the analysis to be used in determining whether a worker is an employee or an independent contractor.
 "The person employed (a) is engaged in an independent business, calling, or occupation; has independent use of his special skill, knowledge, or training in the execution of the work; is performing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; is not subject to discharge because he adopts one method of doing the work rather than another; is not in the regular employ of the other contracting party; is free to use such assistants as he may think proper; has full control over such assistants; and selects his own time."
The presence of no particular one of these factors is controlling; nor is the presence of all required. Id.
3. In this case, Plaintiff worked on job sites as directed by Worrell for years. Plaintiff was never independent of Worrell's ultimate supervision and control. Worrell approved the blueprints and entered into the agreements. His employees followed them. Worrell provided all of the more complex tools. Plaintiff and the other employees brought only a few personal tools such as a tape measures, hammers and tool belts. Plaintiff and others were paid by the hour by Worrell. Plaintiff never received a fixed price or lump sum. As crew leader, Plaintiff would compile a list of the hours they worked each week and present the totals to Worrell. Worrell would then pay them in cash. ". . . Payment by a unit of time, such as an hour, day or week, is strong evidence that Plaintiff is an employee." Youngblood v. North State Ford Truck Sales,321 N.C. 380, 364 S.E. 433 (1988). *Page 24 
4. While Plaintiff and the other employees had some discretion as to their exact hours, Worrell maintained ultimate control. Based upon application of the Hayes v. Elon College factors to this case, the evidence establishes that Plaintiff did not have an independent business or calling but rather was subject to the discretion and control of his employer and as a result, Plaintiff is determined to be an employee of Defendant Worrell. Hayes v. ElonCollege, 224 N.C. 11, 16, 17, 29 S.E. 2d 137, 140 (1944).
5. Employer-Defendant, Jimmy Worrell Construction d/b/a Worrell Construction was the duly-qualified Employer at the time of the accident and is subject to the North Carolina Workers' Compensation Act, having employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident. N.C. Gen. Stat. § 97-2.
6. On March 24, 2009, Plaintiff sustained compensable injuries by accident resulting from an automobile accident that occurred while Plaintiff was in the performance of a duty incident to or connected with the business operations of his employer. N.C. Gen. Stat. § 97-2(6).
7. In order to be compensable under the North Carolina Workers' Compensation Act, an injury by accident must arise out of and in the course of employment. "In general, the term `in the course of' refers to the time, place and circumstances under which an accident occurs, while the term `arising out of' refers to the original or causal connection of the accidental injury to the employment."Gallimore v. Marilyn's Shoes,292 N.C. 399, 402, 233 S.E. 2d 529, 531-32 (1977) (citations omitted). Employer, Defendant, Jimmy Worrell Construction d/b/a Worrell Construction, required Plaintiff to travel to a worksite in Virginia. Plaintiff and the rest of Worrell's crew drove Worrell's vehicle to Lake Gaston and worked. After work and on their way directly back to Worrell's residence, a coworker driving Worrell's vehicle drove the vehicle off the road near Hollister in Halifax County. The vehicle jumped a creek, struck a tree thereby *Page 25 
seriously injuring Plaintiff who was riding as a passenger. Plaintiff's accident was within a reasonable relationship to his employment for the accident to arise out of Plaintiff's employment with Employer-Defendant, Jimmy Worrell Construction d/b/a Worrell Construction.
8. As a result of Plaintiff's compensable injuries by accident on March 24, 2009, Plaintiff is permanently and totally disabled and has been rendered a quadriplegic as a result of the motor vehicle accident of March 24, 2009. Plaintiff may make a showing of disability by producing medical evidence that the work related injury has rendered him physically or mentally incapable of work in any employment, by producing evidence that he is capable of some work but, despite reasonable efforts on his part, has been unable to obtain employment, producing evidence that he is capable of some work but it would be futile because of preexisting conditions, such as age, inexperience, lack of education to seek other employment or producing evidence that he has obtained other employment earning less than his preinjury wage. Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E. 2d 454 (1993).
9. Plaintiff has been rendered a quadriplegic and requires constant care and is unable to bathe or feed himself. Plaintiff is entitled to temporary total disability benefits from March 24, 2009 and continuing. N.C. Gen. Stat. § 97-29.
10. Plaintiff is entitled to reasonable medical care related to his work injury, including the medical care already received, on-going care, and continuing twenty-four per day attendant care. Plaintiff is entitled to reimbursement for amounts he paid for medical care, plus interest. Plaintiff's wife, Cherry Gonzalez, is entitled to compensation for the attendant care she has provided thus far. Plaintiff's wife is entitled to receive minimum wage for the twenty-four daily attendant care she has heretofore provided. It is reasonable and appropriate for her to receive minimum wage for the hours she provides attendant care, prospectively if she is required to *Page 26 
provide any pursuant to the Life Care Plan, which in any event, should not exceed 16 hours per day. Plaintiff is entitled to payment for the Life Care Plan that was prepared by Thaman which totaled $6,568.80. N.C. Gen. Stat. § 97-25.
11. In order to effectively cancel workers' compensation coverage during a term in effect, the Carrier must send by registered or certified mail, return receipt, of a notice of cancellation to the insured. See N.C. Gen. Stat. § 58-36-105. The cancellation is not effective "unless and until" such method is "employed and competed."Id. As a result of Cincinnati's failure to produce any return receipt showing that it properly cancelled Worrell's policy for the 2007-2008 policy period, the cancellation was ineffective, see also,Duganier v. Carolina Mountain Bakery,179 N.C. App. 184, 633 S.E. 2d. 696 (2006), where the Court held that actual testimony (Deputy level) by the insured that he had notice of the cancellation, was insufficient proof of service where the statute required the Carrier to send notice of cancellation by certified mail, return receipt requested.
12. N.C. Gen. Stat. § 58-36-110(b) required Cincinnati to give written notice of non-renewal to Worrell at least 45 days prior to renewal. As a result of Cincinnati's failure to send a non-renewal notice to Worrell, Worrell's policy did not lapse and as such, the policy was still effective once Worrell paid for the renewal. Worrell renewed his policy in August 2008 for the 2008-2009 period.
13. Cincinnati's policy was still in effect on the date of Plaintiff's accident. Accordingly, Cincinnati was the Carrier on the risk for Worrell's employees, including Plaintiff.
14. N.C. Gen. Stat. § 97-21 provides that no agreement by an employee to pay any portion of premium paid by his employer to a Carrier as required by this Article shall be valid. Travelers issued a Workers' Compensation and Employers Liability Policy for the policy period *Page 27 
07-24-08 to 07-24-09 to Plaintiff. Worrell required that his employees take out policies in their own names, while Worrell paid for the policies and had his name added to the policies along with his address. Worrell's actions are in direct contradiction of the policy of the Workers' Compensation Act. As a result, the policy that Plaintiff bought with Traveler's extending from 7-24-08 to 7-24-09, is not valid as Plaintiff was an employee of Worrell's and thus was not required to carry his own workers' compensation insurance. As a result of Plaintiff's invalid purchase of workers' compensation premiums, Plaintiff is entitled to reimbursement of the premiums by his Employer, Worrell.
15. Pursuant to N.C. Gen. Stat. § 97-19, Lamm, as the general contractor, was required to obtain a certificate of insurance "issued by the workers' compensation carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured contractor, stating that such subcontractor has complied with N.C. Gen. Stat. § 97-93 hereof, and if Lamm failed to obtain such certificate, then he shall be liable . . . at the time of subletting such contract to subcontractor . . ."
16. Defendant Lamm did not obtain a certificate of insurance for the project Plaintiff was working on March 24, 2009, and in failing to do so, Lamm became liable to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits on account of injury of any employee of such subcontractor due to an accident arising out of and in the course of performance of work covered by the subcontractor. N.C. Gen. Stat. § 97-19.
17. Defendant-Employer Worrell was the employer of Plaintiff and is liable for Plaintiff's compensation. Defendant Lamm was the statutory upper tier contractor and is liable for Plaintiff's compensation because he failed to obtain a certificate of insurance as required. *Page 28 
N.C. Gen Stat. § 97-19 provides that the Commission must "fix the order in which said parties shall be exhausted, beginning with the immediate employer." The Full Commission therefore concludes that Cincinnati is primarily liable for payment of Plaintiff's compensation as the workers' compensation carrier for Worrell on March 24, 2009. Builders Mutual Insurance Company will only become responsible for payment should Cincinnati default on payments to the Plaintiff.
18. The Scott Insurance Agency is not an insurance carrier or insurer under the meaning of the Act. The Scott Insurance Agency is an independent insurance agency and is not authorized to insure under the Act, therefore the Commission has no jurisdiction to assess an award of workers' compensation benefits against it. N.C. Gen. Stat. § 97-2(7).
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendant-Carrier, Cincinnati Insurance Company shall pay to Plaintiff temporary disability benefits at the rate of $613.75 beginning March 24, 2009 and continuing until further Order of the Commission. Defendant-Carrier, Builders Mutual Insurance Company, becomes responsible for these payments, only if Defendant-Carrier Cincinnati defaults on payment.
2. Defendant-Carrier, Cincinnati Insurance Company, shall provide to Plaintiff reasonable medical care related to his work injury, including the medical care already received, on-going care, and attendant care and reimbursement for amounts Plaintiff paid for medical care, plus interest. Defendant-Carrier, Cincinnati Insurance Company, shall also provide to Plaintiff *Page 29 
compensation for his wife, who has provided essential, life-preserving care. Defendant-Carrier, Cincinnati Insurance Company, shall pay to Plaintiff's wife minimum wage for all of the hours she provided attendant care, retroactively, upon submission to the Industrial Commission of an affidavit of her time. Defendant-Carrier, Cincinnati Insurance Company, shall make payment for the Life Care Plan that was prepared by Thaman which totals $6,568.80. Defendant-Carrier, Builders Mutual Insurance Company, shall become responsible for payment of these payments, only if Defendant-Carrier, Cincinnati defaults on payment.
3. Employer-Defendant, Jimmy Worrell Construction d/b/a Worrell Construction, shall reimburse to Plaintiff any premiums Plaintiff paid to purchase the workers' compensation policy with Travelers Insurance Company which covered the period from July 24, 2008 to July 24, 2009.
4. Defendant-Carrier, Cincinnati Insurance Company, shall pay a reasonable attorney's fee of twenty-five per cent of the compensation due Plaintiff. Twenty-five per cent of any lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's Counsel. Thereafter, Plaintiff's Counsel shall receive every fourth compensation check due Plaintiff. Defendant-Carrier, Builders Mutual Insurance Company, shall become responsible for payment of these attorney's fees only if Defendant-Carrier, Cincinnati Insurance Company, defaults on payment.
5. Penalty Action 2347 is hereby DISMISSED WITH PREJUDICE.
6. Defendant-Carrier, Cincinnati Insurance Company, shall pay the costs of this action. Defendant-Carrier, Builders Mutual Insurance Company, shall become responsible for payment of the costs only if Defendant-Carrier, Cincinnati Insurance Company, defaults on payment. *Page 30 
This ___ day of July, 2011.
 S/____________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
S/____________________ LINDA CHEATHAM COMMISSIONER
S/____________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1